UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

| | |
|---|---|
| KIMBERLY TAYLOR-MCBROOM, )<br>)<br>    Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>THE OAKS NH, L.L.C., dba PARK )<br>MEADOWS HEALTH AND )<br>REHABILITATION CENTER )<br>)<br>    Defendant(s). )<br>_____/ | CASE NO.: |

**Complaint for Damages and Equitable Relief – Jury Trial Demanded**

Now comes the Plaintiff, KIMBERLY TAYLOR-MCBROOM (hereinafter "Plaintiff"), and files her Complaint against THE OAKS NH, L.L.C., dba PARK MEADOWS HEALTH AND REHABILITATION CENTER (hereinafter "Defendant") and alleges as follows:

**Introduction**

1. This is a race discrimination and retaliation complaint brought by Kimberly Taylor-McBroom a black Social Services Director for Long-Term Care employed by Defendant who, despite her nearly nine years of tenure, excellent performance history, exceptional qualifications, and outstanding patient relationships, was treated less favorably than her white coworkers and was fired based on her race under pretext by Administrator, Bob Ritter. She sues pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § § 2000e, et seq. ("Title VII") and 42 U.S.C. §1981, as amended by the Civil Rights Act of 1991 ("Section 1981"). She seeks back pay, compensatory damages, reinstatement or front pay, injunctive and declaratory relief, litigation expenses, and reasonable attorneys' fees.

1

### Jurisdiction, Venue, and Parties

2. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331. This Court has jurisdiction to grant declaratory and further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

3. Venue is proper in the Northern District of Florida pursuant to 28 U.S.C. § 1391 because the events and omissions giving rise to the claims occurred in Alachua County, Florida, where Plaintiff was employed.

4. Plaintiff is an individual residing in Alachua County, Florida who at all times material, was an "employee" as envisioned by Title VII and protected by Section 1981 because she is a non-white (black) U.S. citizen.

5. Defendant is a Foreign Limited Liability Company, and at all times material, was and is an "employer" as envisioned by Title VII and Section 1981.

6. Defendant maintains and operates a skilled nursing facility located at 3250 SW 41st PL, Gainesville, FL 32608-2621 in Alachua County, Florida and has availed itself to the jurisdiction of the Court.

7. At all times relevant to this action, Defendant has employed fifteen or more employees for each working day.

8. Plaintiff's work location was operated as Park Meadows Health and Rehabilitation Center, an active fictitious name owned by The Oaks NH, L.L.C. filed on or about May 7, 2002.

### Satisfaction of Conditions Precedent

9. Plaintiff was terminated on July 1, 2020.

10. On or about October 16, 2020, Plaintiff timely dual-filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC) and Florida Commission on Human Relations (FCHR), alleging race discrimination and retaliation.

11. On or about July 14, 2021, the EEOC issued the Dismissal and Notice of Rights; this action is filed within 90 days of her receipt of the Dismissal and Notice of Rights.

12. This action is filed within 4 years of the adverse actions taken against Plaintiff and alleged in this action.

13. All conditions precedent to this action have been satisfied, have been waived, or would be futile.

**General Allegations**

14. Plaintiff is a black woman.

15. Plaintiff began working for Defendant as a Social Services Assistant in December 2012 and continued in that role until July 2014.

16. In July 2014, Plaintiff accepted a position as a Social Services Director at Signature Healthcare located at 4000 SW 20th AVE, Gainesville, FL and worked there until on or about May 12, 2015.

17. On or about May 20, 2015, Plaintiff returned to work for Defendant as a Social Services Assistant.

18. The following year in 2016, Jonkeia Smith in the Corporate Social Services Division promoted Plaintiff to Social Services Director for Long-Term Care stating that her degree, tenure, and exceptional performance substantiated the promotion.

19. Plaintiff continued to perform exceptionally for Defendant, and she was consistently rated at "exceeds expectations;" as a result, she received pay increases on June 20,

2016, and February 16, 2018; however, the title on the documentation still reflected Plaintiff's position as Social Services Assistant.

20. On or about December 31, 2019, Defendant hired Robert "Bob" Ritter (Caucasian) as an Administrator at Plaintiff's work location: 3250 SW 41st PL, Gainesville, FL 32608-2621.

21. From the beginning of his employment, Mr. Ritter treated black employees less favorably than similarly situated non-black employees in all of the following ways:

   a. Mr. Ritter would fail to acknowledge black employees while routinely greeting and exchanging pleasantries with non-black employees;

   b. Mr. Ritter would acknowledge the input and ideas of non-black employees while routinely ignoring the input of black employees;

   c. Mr. Ritter would decline to engage in conversations with black employees when avoidable;

   d. Mr. Ritter would speak aggressively and combatively, often yelling at black employees and would speak more patiently and understandingly to non-black employees; and

   e. Mr. Ritter disciplined and terminated black employees more aggressively than non-black employees.

22. Mr. Ritter's disparate treatment of black employees caused several black employees to lose opportunities through demotion, termination, denied promotion, or induced resignation including but not limited to: 2 certified nursing assistants, 1 staffing coordinator, 1 wound care specialist, 1 health information manager, and 1 activities director.

23. After being hired, Mr. Ritter treated Plaintiff less-favorably than her non-black colleague Social Services Director, Diane Stephenson (Caucasian). Mr. Ritter would purposefully

discuss questions, concerns, and issues pertaining to Long-Term Care Residents that were Plaintiff's responsibility with Ms. Stephenson rather than speak to Plaintiff directly. This continued even after Ms. Stephenson advised Mr. Ritter that Plaintiff was the appropriate point of contact for such issues.

24. Additionally, Mr. Ritter regularly failed greet Plaintiff, speak to Plaintiff cordially, consider Plaintiff's ideas, or acknowledge Plaintiff in morning meetings.

25. On or about May 1, 2020, Plaintiff was required to submit to a background check despite working for Defendant for 9 years. Ms. Stephenson was not required to take a background check even though she started with Defendant in May 2015, around the same time that Plaintiff was rehired and was working in the same role.

26. On or about May 8, 2020, Mr. Ritter reduced Plaintiff's hours from 40 hours per week to 32 hours per week. Ms. Stephenson contacted Rachel Guzman (Jonkeia Smith's successor) in the Corporate Social Services Division and asked her if she was aware of the decision. She was not.

27. Throughout May and June 2020, Plaintiff reached out several times to Mr. Ritter, Sean O'Malley, and Ms. Guzman asking about the reasoning and permanency of the hour reduction.

28. Around June 22, 2020, Plaintiff explained to Ms. Guzman that her predecessor, Ms. J. Smith, had promoted Plaintiff to Social Services Director of Long-Term Care, and that Ms. Stephenson had informed Mr. Ritter several times and he refused to acknowledge Plaintiff's title or position.

29. Later in the conversation, Mr. Guzman informed Plaintiff that she had informed Mr. Ritter and Mr. O'Malley herself of Plaintiff's correct title (Social Services Director of Long-Term Care) and responsibilities; she also informed Plaintiff that her hour reduction was permanent.

30. Approximately one week later, on July 1, 2020, Mr. Ritter entered Plaintiff's office with the office manager and terminated her employment based on her race.

31. As a reason for the termination, Mr. Ritter said that Defendant was going in a new direction, and her position was no longer needed. Mr. Ritter did not provide a termination letter or any documentation explaining or memorializing the decision.

32. Two days after Plaintiff's termination, Defendant posted a job opening for the position of Social Services Assistant on Indeed.com articulating Plaintiff's exact position as Mr. Ritter understood it.

33. Plaintiff has been damaged by Defendant's illegal conduct.

34. Plaintiff has retained the services of the undersigned counsel and has agreed to pay said counsel reasonable attorneys' fees.

## Count I: Race Discrimination in Violation of Title VII

35. Plaintiff realleges and adopts, as if fully set forth in this Count, all of the allegations in ¶¶ 1-34.

36. Defendant's treatment of Plaintiff resulting in her termination, as more particularly alleged above, was motivated by Plaintiff's race, and thus, violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964.

37. As a direct natural, proximate and foreseeable result of defendant's actions, Plaintiff has suffered lost wages and benefits, in the past and such losses will continue in the future,

she has suffered emotional distress, inconvenience, embarrassment and other non-pecuniary damages and such damages will continue in the future.

38. Defendant's conduct towards Plaintiff was willful, wanton and in flagrant disregard of her federally protected rights against race discrimination so as to justify punitive damages.

39. The discrimination that Plaintiff suffered, in violation of her state and federal statutory rights to be free from such discrimination, constitutes irreparable harm for which there is no adequate remedy at law.

40. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 2000e-5(k).

WHEREFORE, Plaintiff prays that this Court will:

a. issue a declaratory judgment that the discrimination against Plaintiff by Defendant was a violation of her rights under Title VII;

b. enjoin Defendant from continuing to violate Plaintiff's federally and statutorily protected rights and to make Plaintiff whole;

c. enter a judgment for Plaintiff against Defendant and award damages due and owing as of the time of trial, including:

  i. back wages and benefits;
  ii. front wages and benefits;
  iii. compensatory damages;
  iv. punitive damages; and
  v. prejudgment interest.

d. grant Plaintiff her reasonable attorneys' fees and litigation costs pursuant to 42 U.S.C. § 2000e-5(k), and;

e. provide any other relief that is appropriate.

### Count II: Hostile Work Environment in Violation of Title VII

41. Plaintiff realleges and adopts, as if fully set forth in this Count, all of the allegations in ¶¶ 1-34.

42. Plaintiff's race, black, made her a member of a protected category under Title VII.

43. Defendant subjected Plaintiff to unwelcomed harassment.

44. Defendant's harassment of Plaintiff was due to her race, black.

45. Defendant's harassment of Plaintiff was sufficiently severe or pervasive to create an abusive environment and alter the terms of her employment by undermining her effectiveness, withholding critical information regarding her patients, silencing and ignoring her, reducing her hours, and eventually terminating her employment under pretext.

46. Defendant knew or should have known of the discriminatory conduct because several employees had reported it, Ms. Stephenson informed Mr. Ritter that he should speak with directly, and the conduct was committed by an administrator; Defendant is vicariously liable for the actions of its administrators.

47. Defendant failed to remedy the discriminatory conduct and it continued until Defendant terminated Plaintiff.

WHEREFORE, Plaintiff prays that this Court will:

a. issue a declaratory judgment that the discrimination against Plaintiff by Defendant was a violation of his rights under Title VII;

b. enjoin Defendant from continuing to violate Plaintiff's federally and statutorily protected rights and to make Plaintiff whole;

    c. enter a judgment for Plaintiff against Defendant and award damages due and owing as of the time of trial, including:

        i. back wages and benefits;

        ii. front wages and benefits;

        iii. compensatory damages;

        iv. punitive damages; and

        v. prejudgment interest.

    d. grant Plaintiff her reasonable attorneys' fees and litigation costs pursuant to 42 U.S.C. § 2000e-5(k),

    e. provide any other relief that is appropriate.

**Count III: Race Discrimination in Violation of Section 1981**

48. Plaintiff realleges and adopts, as if fully set forth in this Count, all of the allegations in ¶¶ 1-34.

49. The actions of Defendant, resulting in Plaintiff's termination, as more particularly alleged above, had the purpose and effect of denying Plaintiff the same rights to make and enforce contracts and to the full and equal benefit of all laws and proceedings for the security of a person and property as is enjoyed by white citizens, in violation of Plaintiff's rights under 42 U.S.C. § 1981.

50. The actions of defendants alleged above were intentionally and purposefully done to Plaintiff because she was not a white citizen.

51. As a direct, natural, proximate and foreseeable result of defendant's actions, Plaintiff has suffered past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

52. The actions of defendants exhibited oppression, malice, gross negligence, willful or wanton misconduct, or a reckless disregard for Plaintiff's civil rights so as to entitle Plaintiff to an award of punitive damages against defendant to punish it for its conduct and to deter it and others like it from such conduct in the future.

53. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988.

54. Plaintiff, having been discriminated against by Defendant has suffered irreparable harm for which there is no plain, adequate or complete remedy at law.

WHEREFORE, Plaintiff prays that this Court will:

f. issue a declaratory judgment that the discrimination against Plaintiff by Defendant was a violation of his rights under 42 U.S.C. § 1981;

g. enjoin Defendant from continuing to violate Plaintiff's federally and statutorily protected rights and to make Plaintiff whole;

h. enter a judgment for Plaintiff against Defendant and award damages due and owing as of the time of trial, including:

   i. back wages and benefits;
   ii. front wages and benefits;
   iii. compensatory damages;
   iv. punitive damages; and
   v. prejudgment interest.

i. grant Plaintiff her reasonable attorneys' fees and litigation costs pursuant to 42 U.S.C. § 1988; and

j. provide any other relief that is appropriate.

**Jury Trial Demand**

Plaintiff demands trial by jury on all issues so triable.

                                              Respectfully submitted,

                                              Brenton Legal P.A.
                                              *Counsel for Plaintiff*
                                              1070 E. Indiantown Rd., Suite 400
                                              Jupiter, FL 33477
                                              Phone: 954-639-4644

                                  By:     */s/ Christopher A Fennell*

                                              Christopher A Fennell
                                              Florida Bar No.: 113546
                                              CAF@BrentonLegal.com
                                              Ryan Brenton
                                              Florida Bar No.: 107675
                                              RCB@BrentonLegal.com
                                              Travis Beal
                                              Florida Bar No.: 104890
                                              TJB@brentonlegal.com